Case No.: 25-12600

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

COREY L. MCCLAIN,

*Plaintiff-Appellant,*

v.

RAPID RECOVERY AGENCY, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No.: 0:24-cv-60093-WPD

_____

APPELLANT'S OPENING BRIEF

_____

Michael L. Buckner, Esquire
**Buckner Legal Self-Help Program, Inc.**
5224 NW 96th Drive
Coral Springs, Florida 33076-2487
Office: +1-954-347-0112
Facsimile: +1-954-513-4796

*Attorney for the Appellant,*
*Corey L. McClain*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE ENTITIES STATEMENT

Counsel for Appellant certifies the following persons and entities may have an interest in the outcome of this case:

1.   Ally Financial, Inc., Defendant (former) [NYSE: ALLY]

2.   Michael L. Buckner, Attorney for Plaintiff-Appellant

3.   Buckner Legal Self-Help Program, Inc., Plaintiff-Appellant's Law Firm

4.   Cory S. Carano, Attorney for Defendant-Appellee Rapid Recovery

5.   William P. Dimitrouleas, U.S. District Judge

6.   Erin E. Edwards, Attorney for Defendant Ally Financial

7.   Scott Edwards, Attorney for Defendant-Appellee Rapid Recovery

8.   Scott J. Edwards, P.A., Defendant-Appellee Rapid Recovery's Law Firm

9.   Dorrella L. Gallaway, Attorney for Defendant Ally Financial

10.   J. Conrad Grant, Attorney for Defendant-Appellee Rapid Recovery

11.   Patrick M. Hunt, U.S. Magistrate Judge

12.   Eli Kaplan, Attorney for Defendant Ally Financial

13. Kelley Grant & Tanis, P.A., Defendant-Appellee Rapid Recovery's Law Firm

14. Law Office of Coleman & Associates, PA, Defendant-Appellee Rapid Recovery's Law Firm

15. Corey L. McClain, Plaintiff-Appellant

16. Rapid Recovery Agency, Inc., Defendant-Appellee

17. Ellen Rassie, Court Reporter

18. Gina Paola Rodriguez, Court Reporter

19. Troutman Pepper Locke LLP, Defendant Ally Financial's Law Firm

20. Appellant is unaware of any parent corporations and publicly-held corporations that own 10% or more of Appellant's or Appellee's stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant is not requesting an oral argument before this Court pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Eleventh Circuit Rule 28-1(c). However, if this Court determines oral argument will assist the panel with evaluating this case, then Appellant does not oppose, and will eagerly engage in, such a proceeding.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND ..................................... i

CORPORATE ENTITIES STATEMENT ....................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................iii

TABLE OF CONTENTS ................................................................................ iv

TABLE OF AUTHORITIES ............................................................................ vi

JURISDICTIONAL STATEMENT .................................................................... 1

STATEMENT OF THE ISSUE ....................................................................... 2

STATEMENT OF THE CASE ........................................................................ 3

   I.   COURSE OF PROCEEDINGS AND DEPOSITIONS BELOW. .......... 3

   II.   STATEMENT ON THE STANDARD OF REVIEW. ............................. 5

SUMMARY OF THE ARGUMENT ................................................................. 6

ARGUMENT ............................................................................................... 11

   I.   THE DISTRICT COURT ERRED IN GRANTING APPELLEE'S RULE 50 MOTION AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S RULE 59 AND 60 MOTIONS WHEN THE COURT FAILED TO ADHERE TO ELEVENTH CIRCUIT PRECEDENT IN WILLIAMS V. SINGLETARY, 78 F. 3D 1510 (11TH CIR. 1996), AND PROGENY, WHICH MANDATES, ABSENT A DECISION FROM THE STATE SUPREME COURT ON AN ISSUE OF STATE LAW, FEDERAL COURTS IN THE STATE OF FLORIDA ARE BOUND TO FOLLOW DECISIONS OF THE STATE'S INTERMEDIATE APPELLATE COURTS UNLESS THERE IS SOME PERSUASIVE INDICATION THAT THE FLORIDA SUPREME COURT WOULD DECIDE THE ISSUE DIFFERENTLY, WHEN THE DISTRICT COURT CHARACTERIZED A "BREACH OF THE PEACE" AS ONLY INCLUDING ACTIVITIES THAT INVOLVE YELLING; VIOLENCE OR THREATENED VIOLENCE; GENERAL DISTURBANCE; OR PHYSICAL PERSONAL INJURY. ........................................................... 11

     A.   Introduction. ..................................................................... 11

B.  The District Court is Bound to Follow Florida Law. .........................13

C.  Between the 1850s and 1970s, the Florida Supreme Court Applied Concepts Developed Through Roman, European and English Law, As Well As the Early American Common Law, When It Set Broad Parameters on What Constitutes a "Breach of the Peace." .................16

D.  The Florida District Courts of Appeal Did Not Narrow the Scope of "Breach of the Peace." ..........................................................................23

E.  The Decisions of Courts From Other States Support Appellant's Broader Definition of "Breach of the Peace." ........................................28

F.  Conclusion. ......................................................................................30

II.   THE DISTRICT COURT ERRED WHEN THE COURT SHOULD HAVE SET ASIDE THE FINAL JUDGMENT AND RULE 50 ORDER SINCE THE RECORD DEMONSTRATED APPELLEE "BREACHED THE PEACE" WHEN ITS AGENT CONTINUED THE REPOSSESSION AFTER APPELLANT INFORMED THE AGENT THAT HE HAD SUBMITTED PAYMENT FOR THE VEHICLE. ..............................................................35

III. THE DISTRICT COURT'S FINDING THAT APPELLEE ONLY DAMAGED MICHAEL COSTANTINO'S DRIVEWAY AND GRASS WAS CLEARLY ERRONEOUS. ........................................................................38

IV. THE DISTRICT COURT SHOULD HAVE SET ASIDE THE FINAL JUDGMENT AND RULE 50 ORDER SINCE RAPID RECOVERY IS A "DEBT COLLECTOR" UNDER THE FCCPA. ..........................................40

CONCLUSION ............................................................................................44

# TABLE OF AUTHORITIES

## CASES

Arthur v. King, 500 F. 3d 1335 (11th Cir. 2007)..............................................5

Bainbridge v. Governor of Fla., 75 F. 4th 1326 (11th Cir. 2023) ..................6

Bank of Jasper v. Tuten, 62 Fla. 423 (1911). ..........................................19

Barham v. Standridge, 201 Ark. 1143 (1941) ..........................................29

Barnett v. Dept. of Fin. Serv., 303 So. 3d 508 (Fla. 2020) ................. passim

Cioffe v. Morris, 676 F. 2d 539 (11th Cir. 1982) ..........................9, 13, 27, 31

C.I.T. Corporation v. Brewer, 200 So. 910 (1941) ..................................21-22

C.I.T. Corporation v. Reeves, 112 Fla. 424 (1933)................................21-22

Craig v. Park Fin. of Broward County, Inc., 390 F. Supp. 2d 1150 (M.D. Fla. 2005) ............................................................................................43

CSX Transp., Inc. v. Trism Specialized Carriers, Inc., 182 F. 3d 788 (11th Cir. 1999) ....................................................................................15

Daniel v. Morris, 181 So. 3d 1195 (Fla. 5th DCA 2015) .............9, 13, 27, 31

Davenport v. Chrysler Credit Corporation, 818 S.W. 2d 23 (Tenn. Ct. App. 1991) ............................................................................................28

Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).........................................13

Esfeld v. Costa Crociere, S.P.A., 289 F. 3d 1300 (11th Cir. 2002) ............13

Fioretti v. Massachusetts General Life Ins. Co., 53 F. 3d 1228 (11th Cir.1995) ..................................................................................................15

Fulton v. Anchor Sav. Bank, 452 S.E. 2d 208 (Ga. App. 1994) .................28

Future Tech Int'l, Inc. v. Tae Il Media, Ltd., 944 F. Supp. 1538 (S.D. Fla. 1996) ............................................................................................18

Gacek v. American Airlines, Inc., 614 F. 3d 298 (7th Cir. 2010) ................14

Galindo v. ARI Mut. Ins. Co., 203 F. 3d 771 (11th Cir. 2000).....................14

Gann v. BAC Home Loans Servicing LP, 145 So. 3d 906 (Fla. 2d DCA 2014) ..................................................................................................42

Gasperini v. Center for Humanities, Inc., 518 U.S. 415 (1996) ..................13

Guevara v. Lafise Corp., 127 F. 4th 824 (11th Cir. 2025) ...........................5

Heck v. State, 774 So. 2d 844 (Fla. 4th DCA 2000)..............................8, 31

Henderson v. Security Nat'l Bank, 22 U.C.C. Rep. Serv. (CBC) 846, 848-50 (Cal. Ct. App. 1977)......................................................................................29

Helman v. Bank of Am., Case No. 15-13672 (11th Cir. Apr. 12, 2017)......42

Kelliher v. Target Nat'l Bank, 826 F. Supp. 2d 1324 (M.D. Fla. 2011) ...........
.............................................................................................................41, 43

Kellogg v. Schreiber (In re Kellogg), 197 F. 3d 1116 (11th Cir. 1999) .........6

Lundgren v. McDaniel, 814 F. 2d 600 (11th Cir. 1987) ..............................13

Marine Midland Bank-Central v. Cote, 351 So. 2d 750 (Fla. 1st DCA 1977) .................................................................................................................26

McDowell v. James Talcott, Inc., 183 So. 2d 592 (Fla. 3d DCA 1966) ......23

McGriff v. Porter, 5 Fla. 373 (1853) .......................................................7, 19

Mid-levelU, Inc. v. ACI Info. Grp., 989 F. 3d 1205 (11th Cir. 2021).............5

Mills v. Comm'r, Ala. Dep't of Corr., 102 F. 4th 1235 (11th Cir. 2024) .........6

Morgan v. Wilkins, 74 So. 3d 179 (Fla. 1st DCA 2011) ..............................42

Nichols v. Metropolitan Bank, 435 N.W. 2d 637 (Minn. Ct. App. 1989)......27

Nixon v. Halpin, 620 So.2d 796 (Fla. 4th DCA 1993) ................9, 13, 27, 31

Northside Motors of Florida, Inc. v. Brinkley, 282 So. 2d 617 (Fla. 1973)......
.............................................................................................................12, 22

Percifield v. State, 93 Fla. 247 (1927)................................................. passim

Quest v. Barnett Bank of Pensacola, 397 So. 2d 1020 (Fla. 1st DCA 1981) ................................................................................................................ passim

Raffa v. Dania Bank, 321 So. 2d 83 (Fla. 4th DCA 1975) ..........................25

Rasbury v. IRS (In re Rasbury), 24 F. 3d 159 (11th Cir. 1994) ...................5

Rhodes-Carroll Furniture Co. v. Webb, 230 Ala. 251 (1935) .....................29

Rivero v. State, 871 So. 2d 953 (Fla. 3d DCA 2004)..............................8, 30

Sammons v. Broward Bank, 599 So. 2d 1018 (Fla. 4th DCA 1992) .............
.......................................................................................................9, 12, 27, 31

Sarah Alhassid v. Nationstar Mortgage LLC, Case No. 18-13676 (11th Cir. May 8, 2019)...............................................................................................42

Seibel v. Society Lease, Inc., 969 F. Supp. 713 (M.D. Fla. 1997)...... passim

Southern Industrial Savings Bank v. Greene, 224 So. 2d 418 (Fla. 3d DCA 1969) .......................................................................... passim

State Farm Fire and Cas. Co. v. Steinberg, 393 F. 3d 1226 (11th Cir. 2004) ....................................................................................14-15

Stewart v. State, 672 So. 2d 865 (Fla. 2d DCA 1996)............................8, 30

Stone Mach. Co. v. Kessler, 1 Wash. App. 750 (1970) .............................28

Sullivan v. Atlantic Federal Sav. & Loan Ass'n., 454 So. 2d 52 (Fla. 4th DCA 1984) .............................................................................................8, 30

Thrasher v. First Nat'l Bank of Miami, 288 So. 2d 288 (Fla. 3d DCA 1974) ....................................................................................................24

United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) ...............13

United States v. Kelly, 888 F. 2d 732 (11th Cir. 1989) ................................5

Verizon Wireless v. Bateman, 264 So. 3d 345 (Fla. 2d DCA 2019)..........41

Williams v. Singletary, 78 F. 3d 1510 (11th Cir.1996) .............. 11-12, 14-15

**FEDERAL STATUTES**

15 U.S.C. § 1692....................................................................................41

28 U.S.C. § 1291......................................................................................2

28 U.S.C. § 1294......................................................................................2

28 U.S.C. § 1331......................................................................................1

28 U.S.C. § 1637......................................................................................1

28 U.S.C. § 1367......................................................................................1

**FLORIDA STATUTES**

Chapter 78, Florida Statutes (2025)........................................................17

Section 78.01, Florida Statutes (2025) ...................................................18

Section 559.55, Florida Statutes (2024) .................................................41

Sections 559.55-559.785, Florida Statutes (2024) ..................................40

Section 559.72, Florida Statutes (2019) .................................................42

Section 559.77, Florida Statutes (2024) .................................................41

Section 679.503, Florida Statutes (1965) ...................................................22

Section 679.609, Florida Statutes (2025) ...................................................23

**LAWS OF FLORIDA**

Laws of Florida, s. 1, ch. 65-254 ...............................................................22

Laws of Florida, s. 7, ch. 2001-198 ...........................................................23

**FEDERAL RULES OF PROCEDURE**

Eleventh Circuit Rule 28-1 ......................................................................... iii

Federal Rule of Appellate Procedure 32......................................................45

Federal Rule of Appellate Procedure 34........................................................ iii

Federal Rule of Civil Procedure 15 .............................................................37

Federal Rule of Civil Procedure 50 .......................................................1, 4-5

Federal Rule of Civil Procedure 59 ...............................................................5

Federal Rule of Civil Procedure 60 ...............................................................6

**LEGISLATIVE STAFF ANALYSES**

Fla. H.R. Staff Analysis for CS/HB 837, at 2 (Mar. 6, 2023) ..................9, 31

**FLORIDA STANDARD JURY INSTRUCTIONS**

Fla. Standard Criminal Jury Instruction 3.6.................................................31

**LEGAL BOOKS AND ENCYCLOPEDIAS**

8 Am. Jur. 2d Bailments § 50 .....................................................................25

28 Fla. Jur. Replevin §§ 49-51 ...................................................................24

6 Florida Practice Series § 1.1 ...............................................................9, 31

## LEGAL ARTICLES

Michael Korybut, The Uncertain Scope of Revised Article 9's Statutory Prohibition of Exculpatory Breach of Peace Clauses, 10 Hastings Bus. L.J. 271 (2014) ................................................................................. 17

Jennifer S. Martin, "The Repo Man Did What? A Secured Creditor's Article 9 Right to Repossess Collateral and When Lenders Have Liability for Repossessions Gone Awry," 28-5 Commercial Damages Reporter 1 (Sept. 26, 2013) ................................................................................. 29

Ryan McRobert, Comment, Defining "Breach of the Peace" in Self-Help Repossessions, 87 Wash. L. Rev. 569 (2012) ...................................... 7, 16

Sam O. Simmerman & John Variola, Ford Motor Credit Company v. Byrd: Is Repossession Accomplished by the Use of Stealth, Trickery, or Fraud a Breach of the Peace under Uniform Commercial Code Section 9-503, 40 Ohio St. L. J. 501 (1979) .................................................... 7, 16-17

## OTHER AUTHORITIES

"About These Documents," Florida Memory (n.d.), available at: https://www.floridamemory.com/discover/historical_records/election1845/ (visited Oct. 12, 2025) ................................................................. 17

# JURISDICTIONAL STATEMENT

Jurisdiction for this proceeding was proper in the United States District Court for the Southern District of Florida under 28 U.S.C. § 1331 because Plaintiff-Appellant's claims arise under the statutory laws of the United States. The District Court also had supplemental jurisdiction, pursuant to 28 U.S.C. § 1637(a), to adjudicate Plaintiff-Appellant's state-law claim, which was related to, and formed part of, the same controversy created by Defendant-Appellee's violation of the statutory laws of the United States. Further, Plaintiff-Appellant' state-law claim does not involve a novel or complex interpretation of Florida law, nor does it predominate over Plaintiff-Appellant' federal claim. See 28 U.S.C. § 1367(c).

On May 7, 2025, the District Court conducted a jury trial. After the close of evidence for the Plaintiff-Appellant, the District Court granted Defendant-Appellee's Federal Rule of Civil Procedure 50 motion.

On May 8, 2025, the District Court entered an Order Granting Defendant's Motion for Judgment as a Matter of Law and the Final Judgment and Order Closing Case. See Docs. 81-82.

On June 5, 2025, Plaintiff-Appellant filed a Motion to Set Aside Judgment. See Doc. 90. On June 13, 2025, Plaintiff-Appellant filed a Notice

of Supplemental Authority. <u>See</u> Doc. 91. On June 30, 2025, the District Court entered an Order Denying Motion for Reconsideration. <u>See</u> Doc. 95.

On July 31, 2025, Plaintiff-Appellant filed a timely Notice of Appeal. <u>See</u> Doc. 101. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1291 and 1294(1).

## <u>STATEMENT OF THE ISSUE</u>

1. Whether the District Court erred in granting Appellee's Rule 50 Motion and abused its discretion in denying Appellant's Rule 59 and 60 Motions when it relied on a narrow definition of "breach of the peace," instead of the much broader scope afforded by Florida courts, in determining Appellee did not violate Florida law when Appellee's agent damaged a third-party's driveway, grass and decorative stones during the repossession of Appellant's vehicle?

2. Whether the District Court erred when the Court should have set aside the Final Judgment and Rule 50 Order since the record demonstrated Appellee "breached the peace" when its agent continued the repossession after Appellant informed the agent that he had submitted payment for the Vehicle?

3. Whether the District Court's finding that Appellee only damaged Michael Costantino's driveway and grass was clearly erroneous?

4.     Whether the District Court should have set aside the Final Judgment and Rule 50 Order since Appellee is a "debt collector" under the Florida's Consumer Collection Practices Act?

## STATEMENT OF THE CASE

## I.     COURSE OF PROCEEDINGS AND DEPOSITIONS BELOW.

This case involves the violations of the rights of Plaintiff-Appellant Corey L. McClain ("Appellant") under federal and Florida statutory law and the state common law during the January 15, 2024, repossession of his vehicle by Rapid Recovery Agency, Inc. ("Appellee").

On January 16, 2024, Appellant initiated this case in the United States District Court for the Southern District of Florida (the "District Court") with the filing of the Complaint and Demand for Jury Trial against Appellee and Defendant, Ally Financial, Inc., d/b/a Ally Bank Lease Trust ("Ally"). Doc. 1.

On January 19, 2024, Appellant filed an Amended Complaint. Doc. 6.

After Appellee and Ally filed answers to the Amended Complaint in late March 2024, the parties engaged in discovery from April 2024 to December 2024.

On December 6, 2024, Appellant filed a Second Amended Complaint, pursuant to a December 5, 2024, Order of the District Court. Doc. 43.

On December 17, 2024, Appellee filed an Answer and Affirmative Defenses to the Second Amended Complaint. Doc. 44.

On December 20, 2024, Ally filed an Answer and Affirmative Defenses to the Second Amended Complaint. Doc. 45.

On December 20, 2024, the parties engaged in a Zoom Mediation Hearing.

On December 23, 2024, Appellant filed a Notice of Settlement as to Ally. Doc. 46.

On January 17, 2025, Appellant filed a Motion for Summary Judgment. Doc. 50. Appellee subsequently filed a response in opposition to Appellant's summary judgment motion.

On February 5, 2025, the parties filed a Stipulation of Dismissal as to Ally. Doc. 55.

On February 7, 2025, the District Court entered an Order of Dismissal With Prejudice as to Defendant Ally Financial Inc. Doc. 56.

On February 27, 2025, the District Court entered an Order denying summary judgment.

On May 7, 2025, the District Court conducted a jury trial. After the close of evidence for the Appellant, the District Court granted Appellee's Federal Rule of Civil Procedure 50 motion.

On May 8, 2025, the District Court entered an Order Granting Defendant's Motion for Judgment as a Matter of Law and the Final Judgment and Order Closing Case. Docs. 81-82.

On June 5, 2025, Appellant filed a Motion to Set Aside Judgment. Doc. 90.

On June 13, 2025, Appellant filed a Notice of Supplemental Authority. Doc. 91.

On June 30, 2025, the District Court entered an Order Denying Motion for Reconsideration. Doc. 95.

On July 31, 2025, Appellant filed a timely Notice of Appeal. Doc. 101.

## II.     STATEMENT ON THE STANDARD OF REVIEW.

The standard of review is *de novo* for a district court's "grant or denial of a judgment as a matter of law," pursuant to Federal Rule of Civil Procedure 50, and "any questions of law raised by the motion." Mid-levelU, Inc. v. ACI Info. Grp., 989 F. 3d 1205, 1214 (11th Cir. 2021).

Further, the Eleventh Circuit uses an abuse of discretion review when reviewing a district court's denial of a motion for reconsideration under Federal Rule of Civil Procedure 59. See Guevara v. Lafise Corp., 127 F. 4th 824, 829 (11th Cir. 2025). The abuse of discretion standard of review is deferential, and "there will be occasions in which we affirm the district court

even though we would have gone the other way had it been our call." Rasbury v. IRS (In re Rasbury), 24 F. 3d 159, 168 (11th Cir. 1994). In fact, "the abuse of discretion standard allows 'a range of choice for the district court, so long as that choice does not constitute a clear error of judgment.'" Id. (*quoting* United States v. Kelly, 888 F. 2d 732, 745 (11th Cir. 1989)). "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F. 3d 1335, 1343 (11th Cir. 2007) (*quoting* Kellogg v. Schreiber (In re Kellogg), 197 F. 3d 1116, 1119 (11th Cir. 1999)).

Finally, in reviewing a district court's denial of a Federal Rule of Civil Procedure 60 motion, the Eleventh Circuit uses an abuse of discretion standard of review. See Bainbridge v. Governor of Fla., 75 F. 4th 1326, 1332 (11th Cir. 2023). "Rule 60 vests wide discretion in district courts," which a district court only abuses "when it applies an incorrect legal standard, follows improper procedures, makes clearly erroneous factual findings, or applies the law unreasonably." Mills v. Comm'r, Ala. Dep't of Corr., 102 F. 4th 1235, 1239 (11th Cir. 2024).

## SUMMARY OF THE ARGUMENT

The concept of repossession and the "right of self-help [have] long been recognized" in the law and society of the ancient Greeks and Romans.

See Sam O. Simmerman & John Variola, <u>Ford Motor Credit Company v. Byrd: Is Repossession Accomplished by the Use of Stealth, Trickery, or Fraud a Breach of the Peace under Uniform Commercial Code Section 9-503</u>, 40 Ohio St. L. J. 501, 502 (1979); Ryan McRobert, Comment, <u>Defining "Breach of the Peace" in Self-Help Repossessions</u>, 87 Wash. L. Rev. 569, 569 (2012). "Appearing in the Roman Empire, the concept evolved over time as it progressed through other societies, into English law, and then finally into the common law of the United States." McRobert, *supra*, at 569.

Florida courts did not sit idle during this period of early statehood legislative activity in the 1800s. The Florida common law developed such so that sale agreements and related contracts (unfortunately, often involving the institution of slavery) were allowed to include self-help repossession provisions in antebellum Florida prior to the state legislature enacting laws to regulate such transactions. <u>See</u> <u>McGriff v. Porter</u>, 5 Fla. 373, 377 (1853)

A reasonable analysis of Florida Supreme Court and district court of appeal precedent suggests that the state courts recognized and adopted the belief that self-help repossession was designed to balance the common law trilogy of personal, property and societal interests. As a result, the decisions of the Florida Supreme Court and the intermediate appellate courts

demonstrate a "breach of the peace" constituted a wide-range of activities and behaviors.

On the extreme end of the spectrum, Florida courts do recognize violent activities, such as "assault" and "force," that occur during a repossession breach the peace. Under Florida law, an "assault" is defined as "an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril. Thus, it must be premised upon an affirmative act — a threat to use force, or the actual exertion of force." Sullivan v. Atlantic Federal Sav. & Loan Ass'n., 454 So. 2d 52 (Fla. 4th DCA 1984). Further, "force" is defined as any unwanted physical contact that is not likely to cause death or great bodily harm. Further, "deadly force" is defined as force likely to cause death or great bodily harm. See Fla. Standard Criminal Jury Instruction 3.6(f) and (g); Rivero v. State, 871 So. 2d 953, 954 (Fla. 3d DCA 2004); Heck v. State, 774 So. 2d 844, 845 (Fla. 4th DCA 2000); Stewart v. State, 672 So. 2d 865, 868 (Fla. 2d DCA 1996).

Most importantly for purposes of this appeal, Florida courts include less violent and non-forceful activities and behavior as also constituting a "breach of the peace" if done during a self-help repossession. For example, the commission of a tort during a repossession constitutes a "breach of the

peace." Florida law defines a "tort [as] a wrong for which the law provides a remedy. Torts are generally divided into two categories," including "an intentional tort" (i.e., "assault, a battery, or a false imprisonment") and "negligence, which is a tort that is unintentionally committed." Fla. H.R. Staff Analysis for CS/HB 837, at 2 (Mar. 6, 2023) (*citing* 6 Florida Practice Series § 1.1; Barnett v. Dept. of Fin. Serv., 303 So. 3d 508 (Fla. 2020)).

In fact, Florida's broad approach to defining a "breach of the peace" is infused in several decisions from state district courts of appeal. For example, since the Greene Court in the 1960s placed the creditor or its agent in a role similar to that of a bailee, a repossessing creditor violates its non-delegable duty to exercise some degree of care if it or its agent: (1) "damages property"; (2) commits "any negligence" that results in damage; or (3) harms the debtor or third-parties. See Southern Industrial Savings Bank v. Greene, 224 So. 2d 418-19 (Fla. 3d DCA 1969); Quest v. Barnett Bank of Pensacola, 397 So. 2d 1020, 1024 (Fla. 1st DCA 1981); Sammons v. Broward Bank, 599 So. 2d 1018, 1020-21 (Fla. 4th DCA 1992); Daniel v. Morris, 181 So. 3d 1195, 1198 (Fla. 5th DCA 2015); Nixon v. Halpin, 620 So.2d 796, 798 (Fla. 4th DCA 1993).

In this case, in the Rule 50 Order, the District Court's characterization of "breach of the peace" as **only** including activities that involve yelling;

violence or threatened violence; general disturbance; or physical personal injury is consistent more with a standard for punitive damages in repossession cases than the much broader and diverse definition of Florida courts (as explained above). <u>See</u> Doc. 81 at 5-7. Moreover, the District Court's rationale relies on the demotion of Appellant's (and, most importantly, third-party Michael Costantino's) property interests to legal irrelevancy. Such a de-prioritization is not found in Florida Supreme Court or district court of appeals "breach of the peace" repossession precedent.

The evidence introduced at trial demonstrated that Appellee breached its nondelegable duty of care when its agent damaged (through negligence or a tortious activity) Michael Costantino's driveway, grass and decorative stones.

The eyewitness description of the damages, as well as the estimated cost to repair Appellee's damage to the driveway, clearly places this case within Florida courts' broader scope since any negligence that damages property to the debtor or a third-party is a "breach of the peace."

Based on a careful analysis of decisions from the Florida Supreme Court and the state district courts of appeal, the District Court failed to accurately interpret and apply Florida law to the facts of this case. Further, the District Court's definition of "breach of the peace" is also inconsistent with

out-of-state courts' approaches to determining whether a creditor or its agent crossed the line in repossession cases. As a result, this Court should reverse or vacate the Final Judgment of the District Court.

## ARGUMENT

I. **THE DISTRICT COURT ERRED IN GRANTING APPELLEE'S RULE 50 MOTION AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S RULE 59 AND 60 MOTIONS WHEN THE COURT FAILED TO ADHERE TO ELEVENTH CIRCUIT PRECEDENT IN WILLIAMS V. SINGLETARY, 78 F. 3D 1510 (11TH CIR. 1996), AND PROGENY, WHICH MANDATES, ABSENT A DECISION FROM THE STATE SUPREME COURT ON AN ISSUE OF STATE LAW, FEDERAL COURTS IN THE STATE OF FLORIDA ARE BOUND TO FOLLOW DECISIONS OF THE STATE'S INTERMEDIATE APPELLATE COURTS UNLESS THERE IS SOME PERSUASIVE INDICATION THAT THE FLORIDA SUPREME COURT WOULD DECIDE THE ISSUE DIFFERENTLY, WHEN THE DISTRICT COURT CHARACTERIZED A "BREACH OF THE PEACE" AS ONLY INCLUDING ACTIVITIES THAT INVOLVE YELLING; VIOLENCE OR THREATENED VIOLENCE; GENERAL DISTURBANCE; OR PHYSICAL PERSONAL INJURY.**

A. **Introduction.**

This case initially appears simple: How do Florida courts define "breach of the peace" in the 21st Century? However, as an objective person peels back the layers of this appeal, the quest for what constitutes a "breach of the peace" becomes a complex journey involving historical considerations, legislative prerogatives and modern economic realities.

The beginning area of concern implicates the District Court's application of Florida law in determining how to define "breach of the peace."

In other words, Appellant contends the District Court erred when it entered the Order Granting Defendant's Motion for Judgment as a Matter of Law (the "Rule 50 Order") [Doc. 81], the Final Judgment and Order Closing Case (the "Final Judgment") [Doc. 82] and the Order Denying Motion for Reconsideration (the "Reconsideration Order") [Doc. 95] when it failed to adhere to this Court's precedent in <u>Williams v. Singletary</u>, 78 F. 3d 1510 (11th Cir.1996), and its progeny, which mandates, absent a decision from the state supreme court on an issue of state law, federal courts in the State of Florida are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the Florida Supreme Court would decide the issue differently.

Specifically, the District Court neglected to adhere to the <u>Singletary</u> Court's holding when it characterized a "breach of the peace" as only including activities that involve yelling; violence or threatened violence; general disturbance; or physical personal injury rather than the much broader and diverse definition (which includes actions that can be described as "wrongful pressure"; "use [of] force"; "tort liability"; "risk of harm"; "any negligence"; and "third party injured") pronounced initially by the Florida Supreme Court between the late 1920s and early 1970s in <u>Percifield v. State</u>, 93 Fla. 247, 250 (1927); and <u>Northside Motors of Florida, Inc. v. Brinkley</u>,

282 So. 2d 617, 624-25 (Fla. 1973), and subsequently expanded in scope since the 1990s by state district courts of appeal in <u>Sammons v. Broward Bank</u>, 599 So. 2d 1018, 1020-21 (Fla. 4th DCA 1992); <u>Nixon v. Halpin</u>, 620 So.2d 796, 798 (Fla. 4th DCA 1993); and <u>Daniel v. Morris</u>, 181 So. 3d 1195, 1198 (Fla. 5th DCA 2015).

**B.  The District Court is Bound to Follow Florida Law.**

In determining whether the District Court should have relied on federal or Florida law in interpreting what constitutes a "breach of the peace," a review of federal law is crucial.

Under the doctrine articulated by the United States Supreme Court in <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 58 (1938), and its progeny, "federal courts sitting in diversity apply state substantive law and federal procedural law." <u>Gasperini v. Center for Humanities, Inc.</u>, 518 U.S. 415, 427 (1996). Likewise, "[t]he Supreme Court has indicated that the <u>Erie</u> doctrine also applies to pendent state claims litigated in federal courts." <u>Lundgren v. McDaniel</u>, 814 F. 2d 600, 605 (11th Cir. 1987) (*citing* <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966) (dictum)). Further, under the <u>Erie</u> doctrine, a district court with federal question jurisdiction applies the substantive law of the forum state when state law supplies the rule of decision. <u>See</u> <u>Gacek v. American Airlines, Inc.</u>, 614 F. 3d 298, 301-02 (7th

Cir. 2010) (*citing* <u>Esfeld v. Costa Crociere, S.P.A.</u>, 289 F. 3d 1300, 1306 (11th Cir. 2002)).

Thus, since this case involved a federal-question (i.e., FDCPA) that relied on Florida law to define "breach of the peace," then the District Court should have relied on the substantive law of Florida using the three-pronged approach articulated by this Court in <u>State Farm Fire and Cas. Co. v. Steinberg</u>, 393 F. 3d 1226 (11th Cir. 2004); <u>Galindo v. ARI Mut. Ins. Co.</u>, 203 F. 3d 771, 775 (11th Cir. 2000); and <u>Williams v. Singletary</u>, 78 F. 3d 1510, 1515 (11th Cir. 1996).

First, a federal court sitting in the State of Florida determines whether the Florida Supreme Court has "spoken definitively on the issue" at issue or resolved the pertinent question in a decision. <u>State Farm</u>, 393 F. 3d at 1231; <u>Williams</u>, 78 F. 3d at 1515. Thus, a federal court is bound to follow the Florida Supreme Court when it has articulated a decision or included in an opinion "persuasive indication that it would decide the issue differently." <u>Galindo</u>, 203 F. 3d at 775.

Second, "[i]n the absence of definitive guidance from the Florida Supreme Court, we follow relevant decisions of Florida's intermediate appellate courts." <u>State Farm</u>, 393 F. 3d at 1231; <u>see also</u> <u>Galindo</u>, 203 F. 3d at 775 ("Concomitantly, the Florida Supreme Court has held that the

decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court. Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts." (internal citations and quotations omitted)); Williams, 78 F. 3d at 1515 ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.").

Third, "[i]n the absence of precedents from Florida's intermediate appellate courts, however, [a federal court] may consider the case law of other jurisdictions that have examined similar policy provisions." State Farm, 393 F. 3d at 1231.

Regardless of which approach, a federal court's "objective is to determine the issues of state law as [the court would] believe the Florida Supreme Court would." State Farm, 393 F. 3d at 1231 (citing CSX Transp., Inc. v. Trism Specialized Carriers, Inc., 182 F. 3d 788, 790 (11th Cir. 1999); and Fioretti v. Massachusetts General Life Ins. Co., 53 F. 3d 1228, 1235 (11th Cir.1995)).

**C.    Between the 1850s and 1970s, the Florida Supreme Court Applied Concepts Developed Through Roman, European and English Law, As Well As the Early American Common Law, When It Set Broad Parameters on What Constitutes a "Breach of the Peace."**

The concept of repossession and the "right of self-help [have] long been recognized" in the law and society of the ancient Greeks and Romans. <u>See</u> Sam O. Simmerman & John Variola, <u>Ford Motor Credit Company v. Byrd: Is Repossession Accomplished by the Use of Stealth, Trickery, or Fraud a Breach of the Peace under Uniform Commercial Code Section 9-503</u>, 40 Ohio St. L. J. 501, 502 (1979); Ryan McRobert, Comment, <u>Defining "Breach of the Peace" in Self-Help Repossessions</u>, 87 Wash. L. Rev. 569, 569 (2012). Over the course of two thousand years, society defined "repossession" as "[t]he act or an instance of retaking property" and "self-help" as "[a]n attempt to redress a perceived wrong by one's own action rather than through the normal legal process.'" McRobert, *supra*, at 569.

The ideals of repossession and self-help have allowed people throughout history "to regain possession of their rightful and legal property without resorting to a formal judicial process." McRobert, *supra*, at 569. "Appearing in the Roman Empire, the concept evolved over time as it progressed through other societies, into English law, and then finally into the common law of the United States." McRobert, *supra*, at 569.

Under the American version of the common law that was adopted from Great Britain and refined over time by federal and state courts, it was accepted that a conditional seller has the right to "retake collateral without the aid of the courts upon default by the buyer." Simmerman, *supra*, at 502. In fact, the common law "remedy of self-help repossession is designed to balance the interests of the secured party and the debtor" that is represented by "[t]he historic trilogy of personal, property, and societal interests." Michael Korybut, <u>The Uncertain Scope of Revised Article 9's Statutory Prohibition of Exculpatory Breach of Peace Clauses</u>, 10 Hastings Bus. L.J. 271, 325 (2014).

On March 11, 1845, the newly-admitted State of Florida supplemented the American common law with the enactment of a replevin statute, which allowed individuals whose personal property was wrongfully detained to seek recovery from a state court through a writ of replevin. <u>See</u> Chap. 78, Fla. Stat. (2025) (listing the statutory history of numerous provisions in the chapter as being originally enacted on March 11, 1845); "About These Documents," Florida Memory (n.d.), available at: https://www.floridamemory.com/discover/historical_records/election1845/ (visited Oct. 12, 2025). The modern version of early Florida's effort to authorize a replevin law is found in Chapter 78, Florida Statutes (2025),

which permits "[a]ny person whose personal property is wrongfully detained by any other person or officer"[1] to seek judicial process and the sheriff to retrieve the collateral.

Currently, under Florida law, "a writ of replevin may only issue against specific property as to which a claimant has a possessory right." <u>Future Tech Int'l, Inc. v. Tae II Media, Ltd.</u>, 944 F. Supp. 1538, 1549 (S.D. Fla. 1996). Further, through Section 78.10, Florida Statutes (2025), the Florida Legislature contemplated, and legally permits, force to be used in securing the property at issue:

> **Writ; execution on property in buildings or enclosures.—**In executing the writ of replevin, if the sheriff has reasonable grounds to believe that the property or any part thereof is secreted or concealed in any dwelling house or other building or enclosure, the sheriff shall publicly demand delivery thereof; and, if it is not delivered by the defendant or some other person, **the sheriff shall cause such house, building, or enclosure to be broken open** and shall make replevin according to the writ; and, if necessary, the sheriff shall take to his or her assistance the power of the county. However, if the sheriff does not have reasonable grounds to believe that the property to be replevied is secreted or concealed in any dwelling house or other building or enclosure, **the plaintiff may petition the court for a "break order" directing the sheriff to enter physically any dwelling house or other building or enclosure.** Upon a showing of probable cause by the plaintiff, the court shall enter such "break order."

---

[1] Fla. Stat. § 78.01 (2025).

Id. (emphasis added).

Florida courts did not sit idle during this period of early statehood legislative activity in the 1800s. The Florida common law developed such so that sale agreements and related contracts (unfortunately, often involving the institution of slavery) were allowed to include self-help repossession provisions in antebellum Florida prior to the state legislature enacting laws to regulate such transactions. See McGriff v. Porter, 5 Fla. 373, 377 (1853) ("In the instrument under examination, there are no words of transfer or conveyance of the property mentioned, or of any interest therein; neither does it provide that the creditor shall have the possession thereof, but on the contrary, it is expressly stipulated that the possession is to remain with the owner, the debtor, until, by default in the payment of the money, the authority and power shall accrue to the creditor to enter upon the premises of the debtor and take care carry away, and sell and dispose of, the property, pay himself the debt due, and all costs, &c., and return the overplus, if any."); Bank of Jasper v. Tuten, 62 Fla. 423, 427-28 (1911).

In 1927, the Florida Supreme Court, for the first time in a published opinion[2], in Percifield v. State, 93 Fla. 247 (1927), referenced a "breach of

---

[2] Appellant's research of Florida law (which used multiple free legal databases and Internet searches) prior to 1927 did not identify published opinions of the Florida Supreme Court referencing "breach of the peace" in

the peace" in connection with a repossession. Specifically, the <u>Percifield</u> Court summarized the common law, which held that a "vendor may repossess [] property without resorting to legal process, if he can do so without committing a breach of the peace or committing an unlawful trespass." <u>Id.</u> at 250. Most importantly, the <u>Percifield</u> Court cautioned that a "creditor may not exert wrongful pressure upon the debtor to obtain repossession of the secured items. He has no right to use force and enjoys no immunity. He acts at his peril, and exposes himself to severe potential liability, including liability for punitive damages."

Through the Florida Supreme Court's opinion in <u>Percifield</u> in conjunction with the state replevin statute, Florida, in the late 1920s, was providing creditors and debt collectors with two sanctioned paths to repossess property—a judicial avenue in which force could be asserted and a non-judicial alternative, in which "breach of the peace" was mandated.

In 1933, the Florida Supreme Court in <u>C.I.T. Corporation v. Reeves</u>, 112 Fla. 424 (1933), used an appeal involving the repossession of a truck by the owner of a conditional sales contract to advance the legal concept of "breach of the peace" in state jurisprudence. <u>Id.</u> at 424. In determining the

_____

the context of the repossession of collateral. However, Appellant cannot guarantee such a case does not exist.

repossession was legal, the <u>Reeves</u> Court noted the conditional sales contract provided "a complete legal justification for the holder of the· contract, provided he committed **<u>no trespass or assault</u>** in doing so, to retake possession of the motor vehicle covered by it, upon default of the buyer. …" <u>Id.</u> at 425-26. Later, in the opinion, the <u>Reeves</u> Court made it clear if a conditional sales contract holder breaches the peace during a repossession, then he or she would be liable for damages:

> Without doubt, trespasses or assaults perpetrated in exercising the right to peaceably retake possession, as conferred by the contract, are not contemplated by any of the contractual provisions, and if any such trespasses or assaults are committed by the title holder or his agent, in the course of exercising the contract right given, an action on the case for damages will clearly lie."

Id. at 426-27.

Ten months prior to America's entry into World War II, the Florida Supreme Court in <u>C.I.T. Corporation v. Brewer</u>, 200 So. 910 (1941), affirmed its opinion in <u>Reeves</u> involving a case where a repossession agent of the conditional sales contract owner attempted to repossess a vehicle at a repair shop. <u>Id.</u> at 248. When the repair shop agent refused to release the vehicle, the agent attempted to remove the vehicle from the property. <u>Id.</u> at 249. During an altercation between repair shop owner and employees and the agent, the repair shop owner was injured by the agent. <u>Id.</u>

In finding that the agent committed "breach of the peace or a trespass in taking possession of the automobile," the Brewer Court acknowledged its rationale in Reeves: "trespasses or assaults perpetrated in exercising the right to peaceably retake possession" and "if any such trespasses or assaults are committed by the title holder or his agent, in the course of exercising the contract right given, an action on the case for damages will clearly lie. Id. at 250-51.

Finally, in 1973, the Florida Supreme Court, in Northside Motors of Florida, Inc. v. Brinkley, 282 So. 2d 617 (Fla. 1973), recognized a slight evolution in the definition of breach of the peace by emphasizing that self-help repossession techniques that constitute a breach of the peace expose the creditor to tort liability. See id. at 624-25 ("We emphasize that the creditor may not use self-help techniques which would result in a breach of the peace. Such methods would expose the creditor to tort liability. ...").

During the period between the Brewer and Northside Motors decisions, the Florida Legislature passed legislation[3] in 1965 that would become Section 679.503, Florida Statutes (1965). The 2000 version of the law permitted self-help repossession "if this can be done without breach of the peace or may proceed by action." The current version of the law, which is

---

[3] Laws of Florida, s. 1, ch. 65-254.

located at Section 679.609, Florida Statutes (2025), was passed in 2001[4] and provides that, after default, a secured party may take possession of the collateral without judicial process "if it proceeds without breach of the peace." Fla. Stat. § 679.609(1)(a), (2)(b) (2025).

## D. The Florida District Courts of Appeal Did Not Narrow the Scope of "Breach of the Peace."

The District Court's narrow definition of "breach of the peace" is also inconsistent with the opinions of Florida's district courts of appeal, which provide more depth to the definition of "breach of the peace" than the Florida Supreme Court.

A review of "breach of the peace" decisions of Florida's intermediate appeals courts in the repossession context starts with the Third District Court of Appeals' 1966 opinion in McDowell v. James Talcott, Inc., 183 So. 2d 592 (Fla. 3d DCA 1966). In McDowell, the Third DCA noted acts of conversion and trespass committed during a self-help repossession constituted a "breach of the peace" since such activities involved an "unlawful repossession of personalty" and a "repossession without legal process." Id. at 592-93.

---

[4] Laws of Florida, s. 7, ch. 2001-198.

Three years later, the Third DCA authored another repossession decision in <u>Southern Industrial Savings Bank v. Greene</u>, 224 So. 2d 416 (Fla. 3d DCA 1969). In <u>Greene</u>, the Third DCA determined a creditor was liable for a debtor's damages after the creditor "**peaceably** repossessed an auto containing the [debtor's] valuables." <u>Id.</u> at 417 (emphasis added). The <u>Greene</u> Court noted:

> Once having chosen this remedy, the instituting party subjects itself to any liability due to **negligence** arising in the course of enforcement. This would not be the case had the appellants chosen the legal remedy of replevin, whereby the legal officer executing the writ of replevin is primarily liable for damages arising from his actions, and in addition, proper bonds are posted by both parties to provide for situations such as the one which occurred here.

<u>Id.</u> at 418 (emphasis added) (*citing* 28 Fla. Jur. Replevin §§ 49-51).

The <u>Greene</u> Court also posed a valuable question: "The question has arisen in the past as to the liability of a party, peaceably repossessing chattel under a conditional sales contract, who commits a tortious or criminal act while carrying out the repossession." <u>Id.</u> The Third DCA determined "the instant facts present a situation which is closer akin to that of a constructive bailment." <u>Id.</u> Thus, if a creditor or its agent is akin to a bailee, then a repossessing creditor is "duty bound to exercise some degree of care to preserve and restore the thing to such other or to some person for that other,

or otherwise to account for the property as that of such other." Id. at 419 (*quoting* 8 Am. Jur. 2d Bailments § 50).

In 1974, the Third DCA continued its regular stream of repossession opinions in Thrasher v. First Nat'l Bank of Miami, 288 So. 2d 288 (Fla. 3d DCA 1974), by re-affirming prior decisions from Florida courts that held a creditor or agent's conversion or wrongful trespass of collateral converts a legal repossession into an illegal activity. Id. at 289.

In 1975, the Fourth District Court of Appeal entered the "breach of the peace" and repossession fray with its opinion in Raffa v. Dania Bank, 321 So. 2d 83 (Fla. 4th DCA 1975). Raffa is important because the Fourth DCA clarified that when the Florida Supreme Court in Percifield v. State, 93 Fla. 247 (1927), noted a creditor may repossess property only "without committing an unlawful trespass or other breach of the peace," then "the use of the word 'unlawful' as a modification of the term 'trespass' demonstrates that there need be something more than merely entering the real property of the debtor." Raffa, 321 So. 2d at 85 (*quoting* Percifield, 93 Fla. at 250). Thus, the Raffa Court determined that a lawful or authorized entry or trespass (and, thus, the non-existence of a "breach of the peace") occurs when "there was no entry into a home or other closed building on the premises" or where property was taken from an open hanger or garage. Id. at 85.

In 1977, the First District Court of Appeal in <u>Marine Midland Bank-Central v. Cote</u>, 351 So. 2d 750 (Fla. 1st DCA 1977), noted "[c]ases holding creditors liable for trespass or conversion have involved entry in to dwelling, removal of collateral from an enclosed and secured garage, or some fraud or other misconduct by the creditor." <u>Id.</u> at 752. Thus, a creditor is permitted to enter a debtor's property to repossess collateral if the "privilege may be exercised only without breach of the peace." <u>Id.</u> at 752.

To determine if a breach of the peace has occurred, the <u>Cote</u> Court determined the inquiry involves: (1) whether there was entry by the creditor upon the debtor's premises; and (2) whether the debtor or one acting on his behalf consented to the entry and repossession. <u>Id.</u> Since it is apparent when a creditor enters a debtor's property, a trial court would correctly answer the second line of inquiry (i.e., whether the debtor consented to the creditor's entry) if the record demonstrated "repossession of the vehicle from the debtor's unenclosed carport [occurred] without threat or use of force." <u>Id.</u> at 752.

In 1981, the First DCA in <u>Quest v. Barnett Bank of Pensacola</u>, 397 So. 2d 1020 (Fla. 1st DCA 1981), injected a few important nuances to when "breach of the peace" occurred. For example, a "breach of the peace" occurs if there was an unauthorized entry into a locked business or garage. <u>Id.</u> at

1023. Conversely, "[a]s one moves away from the residential threshold to the yard, the driveway, and finally the public street, however, the debtor's argument becomes progressively more tenuous..." Id. However, the Quest Court concluded: "A creditor has been held liable for trespass when the self-help remedy has been accomplished through the use of fraud and deceit." Id. at 1024. Most importantly, the appeals court determined that a "breach of peace can occur if the secured party **damages property** of the debtor while affecting repossession. Also, a creditor is liable for **any negligence** resulting in damage to the debtor's collateral." Id. (citations omitted) (emphasis added).

In 1992, the Florida Fourth District Court of Appeal in Sammons v. Broward Bank adopted with approval a decision from an out-of-state court, Nichols v. Metropolitan Bank, 435 N.W. 2d 637 (Minn. Ct. App. 1989), to further flesh-out what constituted breach of the peace:

> The conditional nature of the secured party's self-help remedies and the language of section 336.9-503 indicate that **a secured party must ensure there is no risk of harm to the debtor and others** if the secured party chooses to repossess collateral by self-help methods. The duty to repossess property in a peaceable manner is specifically imposed on a "secured party" by the uniform commercial code and is intended to protect debtors and other persons affected by repossession activities.

Sammons v. Broward Bank, 599 So. 2d 1018, 1020-21 (Fla. 4th DCA 1992) (emphasis added) (*quoting* Nichols, 435 N.W. 2d at 640).

More recently, Florida courts have noted that if a creditor elects self-help repossession over replevin, then the creditor is liable for any damage or negligence that may occur during the action. See Daniel v. Morris, 181 So. 3d 1195, 1198 (Fla. 5th DCA 2015) ("Creditors electing peaceful repossession over replevin are liable for any negligence during the repossession."); Nixon v. Halpin, 620 So. 2d 796, 798 (Fla. 4th DCA 1993) (holding that the creditor's nondelegable duty to not breach the peace during a repossession extends to third parties injured during the repossession attempt).

**E.    The Decisions of Courts From Other States Support Appellant's Broader Definition of "Breach of the Peace."**

An evaluation of opinions and decisions of courts from other states have articulated a diverse definition of "breach of the peace" that includes non-violent actions rather than the violence-threat-physical-injury version favored by the District Court. See, e.g., Fulton v. Anchor Sav. Bank, 452 S.E. 2d 208, 211-12, 218 (Ga. App. 1994) (finding breach of the peace occurred when debtor attempted to move her vehicle into her garage and repossession men stepped in front of the garage door to block debtor's way); Davenport v. Chrysler Credit Corporation, 818 S.W. 2d 23, 29-30 (Tenn. Ct. App. 1991) ("When the Davenports did not pay on their vehicle due to a dispute over defects, the lender repossessed by entering an enclosed

garage and cutting a padlock that secured the vehicle to a post."); <u>Henderson v. Security Nat'l Bank</u>, 22 U.C.C. Rep. Serv. (CBC) 846, 848-50 (Cal. Ct. App. 1977) (determining repossession of a vehicle by breaking the lock on the debtor's garage door constituted a conversion because force was used); <u>Stone Mach. Co. v. Kessler</u>, 1 Wash. App. 750, 757 (1970) (concluding that the "unauthorized actions of the sheriff in aid of the plaintiff amounted to constructive force, intimidation and oppression constituting a breach of the peace" in repossession of tractor); <u>Barham v. Standridge</u>, 201 Ark. 1143, 1144 (1941) (creditor secured possession through "false and fraudulent representations that [the car] would be repaired and returned to her"); <u>Rhodes-Carroll Furniture Co. v. Webb</u>, 230 Ala. 251, 252 (1935) (noting that there "was no force used, no violence or threats of violence, no physical resistance" breach of peace occurred because creditor posed as an "officer" to repossess vehicle).

Interestingly, the District Court's violence-dependent definition of "breach of the peace" is so excessive that its underlying methodology is more akin to state courts' analyses when determining whether to award **punitive damages** rather than simply deciding if a "breach of the peace" actually occurred. <u>See</u> Jennifer S. Martin, "The Repo Man Did What? A Secured Creditor's Article 9 Right to Repossess Collateral and When Lenders Have

Liability for Repossessions Gone Awry," 28-5 Commercial Damages Reporter 1, 9 n.47 (Sept. 26, 2013) ("Courts frequently decline to award punitive damages on the ground that the repossessor's behavior, even if wrongful, was not outrageous enough to justify them.").

## F.    Conclusion.

Based on the above, a reasonable analysis of Florida Supreme Court and district court of appeal precedent suggests that the state courts recognized and adopted the belief that self-help repossession was designed to balance the common law trilogy of personal, property and societal interests. As a result, the decisions of the Florida Supreme Court and the intermediate appellate courts demonstrate a "breach of the peace" constituted a wide-range of activities and behaviors.

On the extreme end of the spectrum, Florida courts do recognize violent activities, such as "assault" and "force," that occur during a repossession breach the peace. Under Florida law, an "assault" is defined as "an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril. Thus, it must be premised upon an affirmative act — a threat to use force, or the actual exertion of force." Sullivan v. Atlantic Federal Sav. & Loan Ass'n., 454 So. 2d 52 (Fla. 4th DCA

1984). Further, "force" is defined as any unwanted physical contact that is not likely to cause death or great bodily harm. Further, "deadly force" is defined as force likely to cause death or great bodily harm. See Fla. Standard Criminal Jury Instruction 3.6(f) and (g); Rivero v. State, 871 So. 2d 953, 954 (Fla. 3d DCA 2004); Heck v. State, 774 So. 2d 844, 845 (Fla. 4th DCA 2000); Stewart v. State, 672 So. 2d 865, 868 (Fla. 2d DCA 1996).

Most importantly for purposes of this appeal, Florida courts include less violent and non-forceful activities and behavior as also constituting a "breach of the peace" if done during a self-help repossession. For example, the commission of a tort during a repossession constitutes a "breach of the peace." Florida law defines a "tort [as] a wrong for which the law provides a remedy. Torts are generally divided into two categories," including "an intentional tort" (i.e., "assault, a battery, or a false imprisonment") and "negligence, which is a tort that is unintentionally committed." Fla. H.R. Staff Analysis for CS/HB 837, at 2 (Mar. 6, 2023) (citing 6 Florida Practice Series § 1.1; Barnett v. Dept. of Fin. Serv., 303 So. 3d 508 (Fla. 2020)).

In fact, Florida's broad approach to defining a "breach of the peace" is infused in several decisions from state district courts of appeal. For example, since the Greene Court in the 1960s placed the creditor or its agent in a role similar to that of a bailee, a repossessing creditor violates its non-delegable

duty to exercise some degree of care if it or its agent: (1) "damages property"; (2) commits "any negligence" that results in damage; or (3) harms the debtor or third-parties. See Greene, 224 So. 2d at 418-19; Quest, 397 So. 2d at 1024; Sammons, 599 So. 2d at 1020-21; Morris, 181 So. 3d at 1198; Nixon, 620 So. 2d at 798.

In this case, in the Rule 50 Order, the District Court's characterization of "breach of the peace" as **only** including activities that involve yelling; violence or threatened violence; general disturbance; or physical personal injury is consistent more with a standard for punitive damages in repossession cases than the much broader and diverse definition of Florida courts (as explained above). See Doc. 81 at 5-7. Moreover, the District Court's rationale relies on the demotion of Appellant's (and, most importantly, third-party Michael Costantino's) property interests to legal irrelevancy. Such a de-prioritization is not found in Florida Supreme Court or district court of appeals "breach of the peace" repossession precedent.

The evidence introduced at trial demonstrated that Appellee breached its nondelegable duty of care when its agent damaged (through negligence or a tortious activity) Michael Costantino's driveway, grass and decorative stones:

- Appellant's Mother, Crystal Combs, observed: "There were large scrapes in the pavers in two different areas and there was grass pulled up like near the road where I don't know if something had caught it, but it tossed the grass out onto the road. There was patches." Doc. 106 at 101. Combs also testified that "seven, eight pavers, but in two separate areas" were damaged as a result of the repossession. Doc. 106 at 102.

- Kaylee DeOliveira, Appellant's girlfriend, testified: "When I walked over there, there were about three or four scuff marks. A couple of them were pretty deep. And like a good one-by-one patch of my grass was lifted up off my yard." Doc. 106 at 135.

- Appellant recalled observing "long scratches in the driveway" and "actually long, deep gouges in the paver. Like, at least like a line, maybe like a foot and a half long of the scratch like where the car was pulled off from. And there was also scratches like around the side by where the rocks and then the grass was pulled up on the edge of the lawn." Doc. 106 at 154-55.

- An estimate by a paver company to repair the driveway damage came to $15,300. Docs. 74-2, 74-3 and 106 at 113.

- Testimony from two witnesses also demonstrated decorative pavers around the driveway were damaged during the repossession. <u>See</u> Argument, Section III, *infra*.

The eyewitness description of the damages, as well as the estimated cost to repair Appellee's damage to the driveway, clearly places this case within Florida courts' broader scope since any negligence that damages property to the debtor or a third-party is a "breach of the peace."

Finally, the District Court claimed Appellant "does not assert any negligence causes of action." Doc. 81 at 6. However, Appellant does not have to make a specific legal claim for negligence since he alleged Appellee breached the peace during the repossession and described the negligent activity in detail in the Second Amended Complaint and at trial.

Based on a careful analysis of decisions from the Florida Supreme Court and the state district courts of appeal, the District Court failed to accurately interpret and apply Florida law to the facts of this case. Further, the District Court's definition of "breach of the peace" is also inconsistent with out-of-state courts' approaches to determining whether a creditor or its agent crossed the line in repossession cases. As a result, this Court should reverse or vacate the Final Judgment of the District Court.

**II. THE DISTRICT COURT ERRED WHEN THE COURT SHOULD HAVE SET ASIDE THE FINAL JUDGMENT AND RULE 50 ORDER SINCE THE RECORD DEMONSTRATED APPELLEE "BREACHED THE PEACE" WHEN ITS AGENT CONTINUED THE REPOSSESSION AFTER APPELLANT INFORMED THE AGENT THAT HE HAD SUBMITTED PAYMENT FOR THE VEHICLE.**

The District Court failed to follow Florida substantive law when it declined to set aside the Final Judgment and the Rule 50 Order despite trial testimony demonstrating a "breach of the peace" occurred when Appellee's agent continued the repossession after Appellant advised the agent that payment for the vehicle has been submitted. In fact, in Section II-A of the Rule 50 Order, the District Court reviewed the testimony offered at trial on the issue of "breach of the peace" and concluded: "The Court heard no testimony about any altercation between the repossessing agent and Plaintiff." Doc. 81 at 6. The District Court's finding of fact was clearly erroneous based on a reasonable review of the trial transcript.

As expressed below, this Court should set aside, pursuant to Rule 60(b)(1), the Rule 50 Order on this conclusion of law since it constitutes legal error and is inconsistent with the testimony presented during trial.

It is the District Court's reliance on <u>Seibel v. Society Lease, Inc.</u>, 969 F. Supp. 713 (M.D. Fla. 1997), in Section II-C of the Rule 50 Order that triggered this inquiry. In <u>Seibel</u>, the district court determined:

Plaintiffs have plead facts sufficient to bring a cause of action for breach of the peace. Consent must be freely given to enter the property of a debtor in order to repossess. Quest v. Barnett Bank of Pensacola, 397 So. 2d 1020, 1023 (Fla. Dist. Ct. App. 1981). The debtor may revoke the right to self-help repossession by objecting to the repossession. Id. Entry after consent has been revoked is a breach of the peace. Id. Falcon may have breached the peace by repossessing the truck from Plaintiffs' private driveway. Plaintiffs may have been considered to have revoked any implied right to self-help when they informed Society that they were going to continue payments on the vehicle. Falcon could have breached the peace by trespassing on Plaintiffs' land without notice. A cause of action exists for breach of the peace because this may have led to Plaintiffs' damages.

Id. at 718.

Here, the allegations asserted in the pleadings, as well as evidence presented during the May 7, 2025, jury trial, supports an alternate way Appellee breached the peace during the January 15, 2024, repossession. Specifically, Appellant alleged in the Second Amended Complaint that he had confronted the Rapid Recovery driver during the repossession. See Doc. 43 ¶ 24(b) ("McClain confronted the tow truck driver. ...") (incorporated by reference in Counts I, II and III of the Second Amended Complaint through ¶¶ 30, 38 and 42). Next, during the May 7, 2025, jury trial, Appellant testified, on direct examination, that he advised the Appellee's agent/driver that the repossession was not necessary since he had submitted a monthly payment to Ally Financial, Inc., d/b/a Ally Bank Lease Trust, the prior day:

Q. Okay. And what happened? Take me step by step. What happened after you went outside to assess what was going on?

A. So I went outside, and I saw that the car was being repossessed. I walked over to the driver of the tow truck, and I tried to explain to him, like, "Hey, I made this payment, and I made sure I got it in." And he was like, "Yeah, that's a problem between you and the bank," and he clearly took the car.

Doc. 106 at 152, lines 6-13.

A reversal or vacation of the Final Judgment is warranted under two complementary reasons.

First, based on the trial testimony (which amplified the allegations in the Second Amended Complaint), Appellee breached the peace by repossessing the vehicle despite Appellant revoking any implied right to self-help when he informed the recovery agent that he had made a payment on the vehicle. See Seibel, 969 F. Supp. at 718; Quest v. Barnett Bank of Pensacola, 397 So. 2d 1020, 1023 (Fla. 1st DCA 1981) ("Although it is true that Mrs. Quest never ejected the bank's agents from the premises, she did request that they delay their action.").

Second, based on Appellant's trial testimony, the Court can amend the pleadings pursuant to Federal Rule of Civil Procedure 15(b)(2), which states that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in

the pleadings." Under Rule 15(b)(2), "a judgment may be based on an unpled issue as long as consent to trial of the issue is evident." Cioffe v. Morris, 676 F. 2d 539, 541 (11th Cir. 1982). Implied consent will not be found if the defendant had no notice of the issue, the defendant could have offered more evidence on the issue, or if the defendant was otherwise denied a fair opportunity to defend. See id. at 541-42.

Based on the rationale explained above, this Court should reverse, vacate or set aside the Final Judgment since the District Court failed to follow Florida substantive law when it determined a "breach of the peace" did not occur when Appellee's agent continued the repossession after Appellant advised the agent that payment for the vehicle has been submitted.

## III. THE DISTRICT COURT'S FINDING THAT APPELLEE ONLY DAMAGED MICHAEL COSTANTINO'S DRIVEWAY AND GRASS WAS CLEARLY ERRONEOUS.

The District Court concluded that the only portions of Michael Costantino's property that Appellee damaged during the repossession were the pavers in the driveway and the grass is inconsistent with the trial testimony. See Doc. 81 at 6-7. Nevertheless, the District Court's finding of fact was clearly erroneous.

The record demonstrates Appellee damaged a third element of Costantino's property—the decorative stones that boarder the driveway. For

example, on direct examination, Kaylee DeOliveira testified the decorative stones were damaged by Appellee:

Q. Okay. And were -- the driveway had decorative stones?

A. Yeah.

Q. And were those stones damaged?

A. Yeah, they were damaged after the tow truck left.

Doc. 106 at 135, lines 14-17.

Further, the November 15, 2024, deposition testimony of Michael Costantino, which was read into the record during the trial, confirmed the decorative stones that surround the driveway were also damaged during the repossession.

"QUESTION: Okay. You mentioned that -- you testified that there was some damage on the driveway to the pavers and to the stones. Could you describe the --

"ANSWER: Yeah.

"QUESTION: About the stones a little bit more.

"ANSWER: They're just -- they're just, you know, stones that are in a surrounded tree. So it was -- it was really superficial. It's no -- it's no big deal. They were" --

Doc. 106 at 173, lines 16-24.

Appellee did not introduce any testimony or other evidence during trial to rebut Appellant's contention that the decorative stones were damaged

during the repossession. Thus, the District Court had to rely on the evidence introduced by Appellant, which supported a conclusion that the decorative stones were damaged during the repossession.

As a result, since the District Court made a clearly erroneous ruling, this Court should reverse since a third piece of property damaged during the repossession would go toward demonstrating the severity of Appellee's negligence—which constituted a "breach of the peace."

## IV. THE DISTRICT COURT SHOULD HAVE SET ASIDE THE FINAL JUDGMENT AND RULE 50 ORDER SINCE RAPID RECOVERY IS A "DEBT COLLECTOR" UNDER THE FCCPA.

The District Court, in Section II-C of the Rule 50 Order, concluded "Plaintiff makes no additional arguments to suggest that the standard for who qualified as a 'debt collector' under the FDCPA differs from that under the [Florida Consumer Collection Practices Act (Sections 559.55-559.785, Florida Statutes) ("FCCPA")]. Accordingly, Plaintiff also fails to show that Rapid Recovery violated the FCCPA and Defendant is entitled to judgment on this count as well." Doc. 81 at 8. The District Court cited Seibel v. Society Lease, Inc., 969 F. Supp. 713 (M.D. Fla. 1997), in support of its conclusion. See Doc. 81 at 8. However, this Court should have set aside, pursuant to Rule 60(b)(1), the Rule 50 Order on this conclusion of law since the Court was in legal error and its analysis inconsistent with the prevailing law of the

Eleventh Circuit and the State of Florida, which states the FCCPA applies not only to debt collectors but also to any "person."

Federal and state courts have held that "the FCCPA is construed in accordance with the FDCPA," <u>Kelliher v. Target Nat'l Bank</u>, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011); Fla. Stat. § 559.77(5) (2024) ("In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act."). However, the courts have identified a major difference between the statutes.

For example, the FDCPA provides that a debtor may bring an action against "any debt collector" who violates the law. 15 U.S.C. § 1692k(a). A "debt collector" includes "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

In contrast, under the FCCPA, "a debtor may bring a civil action against . . . any person who fails to comply with" its provisions. Fla. Stat. § 559.77 (2024). In turn, Section 559.55(7), Florida Statutes (2024), defines a "debt collector" as:

> any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another. The term "debt collector" includes any creditor who, in the process of collecting her or his own debts, uses any name other than her or his own which would indicate that a third person is collecting or attempting to collect such debts.

Thus, Florida courts have determined "the FCCPA applies not only to debt collectors but also to any 'person.'" <u>Gann v. BAC Home Loans Servicing LP</u>, 145 So. 3d 906, 910 (Fla. 2d DCA 2014); <u>Verizon Wireless v. Bateman</u>, 264 So. 3d 345, 351-52 (Fla. 2d DCA 2019) ("This statute imposes legal duties on consumer debt collectors.") (*citing* Fla. Stat. § 559.72 (2019); *and* <u>Morgan v. Wilkins</u>, 74 So. 3d 179, 181 (Fla. 1st DCA 2011)).

The District Court cited <u>Seibel v. Society Lease, Inc.</u>, 969 F. Supp. 713 (M.D. Fla. 1997), in support of its conclusion. But <u>Seibel</u>, a 1997 decision, was entered over twenty years prior to Eleventh Circuit opinions that have adopted more recent Florida judicial pronouncements on the issue. For instance, in <u>Sarah Alhassid v. Nationstar Mortgage LLC</u>, the Eleventh Circuit noted "the FCCPA applies to any 'person' collecting a consumer debt; it is not limited to statutorily defined 'debt collectors,' like the FDCPA." Case No. 18-13676, slip op. at 8 (11th Cir. May 8, 2019). Two years earlier, the Eleventh Circuit in <u>Helman v. Bank of Am.</u> found "[t]he FCCPA applies to anyone who attempts to collect a consumer debt which, unlike the FDCPA, brings [the defendant] within its ambit." Case No. 15-13672, slip op. at 7 (11th

Cir. Apr. 12, 2017). District courts in this Circuit have consistently adhered to the notion that the FCCPA applies to original creditors, as well as debt collection agencies. <u>See</u>, <u>e.g.</u>, <u>Kelliher</u>, 826 F. Supp. 2d at 1327-28 ("There is one distinct difference between the two laws, however. Although the federal FDCPA does not apply to original creditors, the FCCPA has been interpreted to apply to original creditors as well as debt collection agencies."); <u>Craig v. Park Fin. of Broward County, Inc.</u>, 390 F. Supp. 2d 1150, 1154 (M.D. Fla. 2005).

Since the District Court used an incorrect legal interpretation in Section II-C of the Rule 50 Order, this Court should reverse.

## **CONCLUSION**

Based on the legal rationale and the analysis of facts articulated herein, the District Court erred in with the entry of the Order Granting Defendant's Motion for Judgment as a Matter of Law [Doc. 81], the Final Judgment and Order Closing Case [Doc. 82] and the Order Denying Motion for Reconsideration. As a result, this Court should reverse the District Court's determination.

Dated: November 10, 2025.        Respectfully submitted,


s/ Michael L. Buckner
_____
Michael L. Buckner, Esquire
Florida Bar No. 106331
BUCKNER LEGAL SELF-HELP PROGRAM
Email: michaelbucknerlaw@gmail.com
5224 NW 96th Drive
Coral Springs, Florida 33076-2487
Office: +1-954-347-0112
Facsimile: +1-954-513-4796

*Attorney for Appellant,*
*Corey L. McClain*

## CERTIFICATE OF COMPLIANCE

Appellant's counsel certifies that the Opening Brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 97 in 14 font-size and Arial type-style.

Dated: November 10, 2025.     Respectfully submitted,

s/ Michael L. Buckner
_____
Michael L. Buckner, Esquire
Florida Bar No. 106331
BUCKNER LEGAL SELF-HELP PROGRAM
Email: michaelbucknerlaw@gmail.com
5224 NW 96th Drive
Coral Springs, Florida 33076-2487
Office: +1-954-347-0112
Facsimile: +1-954-513-4796

*Attorney for Appellant,*
*Corey L. McClain*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Scott Edwards, Esquire
Scott J. Edwards, P.A.
150 East Palmetto Park Road, Suite 800
Boca Raton, Florida 33432

Cory Samuel Carano, Esquire
Kelley & Grant, P.A.
399 NW 2nd Avenue, Suite 222
Boca Raton, Florida 33432

J. Conrad Grant, Esquire
Kelley Grant & Tanis, P.A.
370 Camino Gardens Boulevard, Suite 301
Boca Raton, Florida 33432

*Attorneys for Appellee,*
*Rapid Recovery Agency, Inc.*

s/ Michael L. Buckner
_____
Michael L. Buckner, Esquire